367 F.2d 771
 E. Gene CRANE, Libelant,
v.
The GAS SCREW HAPPY PAPPY, Official No. 294475 et al., Respondent.
Curt HERBERTS, d/b/a Herberts International Marine, Libelant,
v.
The GAS SCREW HAPPY PAPPY, Official No. 294475 et al., Respondent.
Howard R. REULAND, Claimant-Appellee,
Russell W. BORROWDALE, Intervening Petitioner and Claimant-Appellant,
R. W. Borrowdale Company, Intervening Petitioner and Claimant.
 No. 15621.
 United States Court of Appeals Seventh Circuit.
 November 3, 1966.
 Rehearing Denied December 5, 1966. En Banc)
 
 Milton O. Gordon, Chicago, Ill., for Russell W. Borrowdale, claimant-appellant.
 Edward S. Silber, Jonathan G. Bunge, Chicago, Ill., Joseph Keig, Jr., Chicago, Ill., for Howard R. Reuland, claimant-appellee. Spray, Price, Hough & Cushman, Chicago, Ill., of counsel.
 Before HASTINGS, Chief Judge, and CASTLE and FAIRCHILD, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 Russell W. Borrowdale, appellant, prosecutes this appeal from a judgment order of the District Court finding him guilty of contempt and ordering that he deliver certain described property, and pay a fine of $2500, to Howard R. Reuland, the appellee; and that in event of failure to deliver the property and pay the fine within a period of five days, Borrowdale be thereafter imprisoned until he complies with such order.
 
 
 2
 Borrowdale and Reuland were adverse claimants in consolidated admiralty actions commenced in the District Court in 1964 by libelants E. Gene Crane and Curt Herberts against the vessel Happy Pappy to enforce maritime liens. Borrowdale and Reuland each sought to be declared the owner of the Happy Pappy and her appurtenances and to be allowed to defend the suits on behalf of the vessel. On September 29, 1965, the court, after hearing evidence on the issues of ownership and right to possession, entered findings of fact, conclusions of law, and a decree and order, declaring Reuland to be the lawful owner and entitled to possession of the vessel and her appurtenances. On September 30, 1965, Borrowdale, who had temporary possession of the vessel as custodian for the court, delivered the Happy Pappy to Reuland, who had been adjudged owner and was appointed custodian of the vessel until its release to him upon the execution and filing of an approved stipulation for value in the amount of $40,000.[1]
 
 
 3
 On October 1, 1965, Reuland filed a motion for an order directing Borrowdale to show cause why he should not be held in contempt for failure to deliver with the vessel a 13 foot Boston Whaler (dinghy), the brackets by which the dinghy was attached to the vessel, and two fish-fighting chairs, alleged to be appurtenances of the vessel and to have been removed from the vessel prior to her delivery by Borrowdale to Reuland. The record discloses that the items in question were removed from the vessel by Borrowdale.
 
 
 4
 The judgment order appealed from was entered following a hearing on a subsequent rule to show cause issued upon a petition filed by Reuland on November 19, 1965, that the appellant, Borrowdale, show cause why he should not be held in contempt for willful defiance and resistance to a November 9, 1965, order of the court directing him to deliver the dinghy, its brackets, and the fish-fighting chairs to William Fournier, as agent of Reuland. The District Court made and entered findings of fact that, among other things:
 
 
 5
 On October 8, 1965, the hearing on the aforementioned Order to Show Cause [the rule issued on Reuland's October 1, 1965, motion] was held. After the hearing of evidence, it was agreed by and between the parties in open Court, that Russell W. Borrowdale would deliver to Howard R. Reuland the thirteen (13) foot Boston Whaler and brackets for same, and two fish-fighting chairs. At this time, the said Russell W. Borrowdale was physically present in Court. Thereafter, this Court discharged the Rules to Show Cause why Russell W. Borrowdale should not be held in contempt for his failure to comply with the Court's Order to deliver the aforesaid property and for his representations to the Chicago Police Department, Illinois State Police, and United States Marshal that he was the owner of the vessel, entitled to possession, and that the vessel had been stolen by Howard R. Reuland.
 
 
 6
 On November 9, 1965, without opposition, this Court entered a further Order directing delivery of the aforementioned property to William Fournier, an agent for Howard R. Reuland.
 
 
 7
 The findings recite repeated attempts of William Fournier to obtain delivery of the property from appellant, and that:
 
 
 8
 Mr. Borrowdale repeatedly refused to comply, although he acknowledged that he had possession of the property.
 
 
 9
 Howard R. Reuland has incurred expenses, losses and other damages as a result of the foregoing acts of Russell W. Borrowdale in the sum of Two Thousand Five Hundred ($2,500.00) Dollars.
 
 
 10
 The appellant seeks reversal of the District Court's contempt adjudication and order on the basis of contentions that the court did not have jurisdiction of the res which was the subject matter of its November 9, 1965, delivery order; that failure to give timely notice of the presentation of the November 19, 1965, petition for a rule to show cause resulted in substantial prejudice to the appellant; that the finding of contempt is not supported by clear and convincing evidence; and that the award of $2,500.00 to appellee as compensation for losses, expenses and damages is excessive and unwarranted.
 
 
 11
 The appellant's argument that the court lacked jurisdiction of the res (the dinghy, its brackets, and the fish-fighting chairs) is predicated upon the premises that the record does not support, and the court failed to make, a finding that these articles were on board when, in July of 1964, the vessel and her appurtenances were seized and attached pursuant to monitions issued in the libel in rem actions against the vessel. In this connection the record does disclose that these articles were on board and a part of the vessel's equipment and fixtures in 1963 when appellant brought her from New Orleans to Chicago, and that they were removed by the appellant while he was in possession of the vessel. There is inconsistency in Borrowdale's testimony as to whether he removed the articles in the month preceding his delivery of the vessel to Reuland on September 30, 1965, or whether they had been removed prior to the July 1964 seizure and attachment of the vessel. But it was wholly unnecessary for the court to resolve any factual issue in this connection. The appellant agreed in open court on October 8, 1965, to turn the articles over to the appellee, and that an order incorporating such agreement would be presented to the court. And, appellant did not oppose entry of the November 9, 1965, turn-over order. Appellant does not question the court's jurisdiction over the vessel or of the subject matter generally. And, it is obvious that the court had jurisdiction of the person of the appellant. He not only had intervened as a petitioner claimant in the libel in rem actions and thereby became a party to the consolidated proceedings, but in addition, pursuant to stipulation of the parties and order of the court, he was designated the court's custodian in possession of the vessel and her appurtenances, subject to the court's further order. Jurisdiction over the specific res which was the subject of the November 9, 1965 order, if it did not independently exist, was conferred by the waiver and consent implicit in appellant's agreement in open court to deliver the articles to the appellee, and that an order so directing might be entered. Reed v. Steamship Yaka, 3 Cir., 307 F.2d 203, 204-205.[2]
 
 
 12
 We perceive no merit in appellant's contention that appellee failed to serve timely notice of the presentation of the November 19, 1965, petition for a rule to show cause, and that appellant was substantially prejudiced by not having received at least five days notice. Notice of the motion was served November 18, 1965, upon appellant's then counsel of record in conformity with and as permitted by Rule 12 of the General Rules of the United States District Court for the Northern District of Illinois. At the same time, and as a courtesy, notice was also served on appellant's present counsel. Counsel for appellee had been informed on the preceding day that appellant was effecting a change in counsel.
 
 
 13
 Moreover, no prejudice to appellant resulted. Appellant's then counsel appeared for him on November 19, no objection was made to the adequacy of the notice, and although the rule to show cause issued it was not made returnable until December 3, 1965. Appellant's present counsel, although advised on November 19, that the rule had issued, did not enter his appearance until December 1, and on December 3, obtained a continuance of the matter until December 10, 1965. There is no basis for the contention that the lack of an additional four days notice of the presentation of the motion for a rule to show cause occasioned any prejudice to the appellant.
 
 
 14
 The contention that the finding of contempt is not supported by clear and convincing evidence is bottomed on appellant's claim that his October 8, 1965, agreement, made in open court, to deliver the articles in controversy to the appellee was contingent upon the appellee's first posting an additional bond, which appellee failed to do. Such contention ignores the fact that the order of November 9, 1965, directing that the dinghy, its brackets, and the fish-fighting chairs be delivered to appellee, which was entered without objection on the part of appellant, contained no such qualification. Moreover, the colloquy which appears in the transcript of the October 8, proceeding, and in which the agreement was announced, contains no mention of any prerequisite that the appellee post additional bond.
 
 
 15
 The testimony of the appellant, and that of an employee of the appellant, given at the December 10, 1965, hearing on the rule to show cause, to the effect that there was an understanding, as part of the October 8 agreement, that appellee was to post an additional bond in the amount of $3000 is in direct conflict with the testimony of the counsel for the appellee with whom the agreement for the posting of an additional bond was supposedly reached. He denied any such agreement, and denied that any conversation with the appellant, or with anyone else, on the subject of an additional bond took place, except that when the witness and William Fournier and a deputy marshal went to Borrowdale's plant on November 18, 1965, to secure possession of the articles, Borrowdale stated at that time that he wanted an additional bond put up. That any credibility issue relevant to the court's ultimate findings which may have been presented by this conflict in testimony was resolved adversely to the appellant is evident from the trial judge's statement at the conclusion of the December 10 hearing with respect to the appellant:
 
 
 16
 "But what bothers me about your client [Borrowdale] is that having, in effect, defied the order of the court and defying the marshal, and, in effect, taking the law into his own hands, I have also reached the conclusion that in making the statements that he has made here from the witness stand that he committed perjury as well." The existence of a conflict in the testimony of witnesses does not, where credibility is involved, negate the clear and convincing quality of the credited evidence.
 
 
 17
 The record clearly demonstrates that appellant refused to comply with the November 9, 1965, order of the District Court that the dinghy, its brackets, and the fish-fighting chairs, be delivered to the appellee. We find nothing in the record, when examined and appraised in the context of the contentions of appellant, which discloses any legal infirmity in that order. But, in any event, it is pertinent to note in this connection that in United States v. United Mine Workers of America, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884, it was observed that there is:
 
 
 18
 "[I]mpressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."
 
 
 19
 To the same effect see: Nelson v. Steiner, 7 Cir., 279 F.2d 944, 948 and Land v. Dollar, 88 U.S.App.D.C. 311, 190 F.2d 366, 379.
 
 
 20
 Without extending this opinion to detail the background the record portrays as the setting in which the appellant's refusal to obey the November 9, 1965, order occurred, or the conduct and statements of the appellant, suffice it to state that the record overwhelmingly evidences an intentional, deliberate, willful and contumacious defiance of the court's order, and a contemptuous disrespect for orderly execution of judicial process. In appellant's own words he arrogantly assumed the position that:
 
 
 21
 "I am the boss of this lawsuit and things are going to be done different from here on out."
 
 
 22
 The conduct of the appellant and his statements make apt the observation in Raymor Ballroom Co. v. Buck, 1 Cir., 110 F.2d 207, 211, that:
 
 
 23
 "Surely the courts are not powerless to deal with such contumacious acts as here took place; otherwise disrespect for the orderly execution of writ and process would become rampant and the efforts of court officers to discharge their duties might with impunity be turned into a burlesque."
 
 
 24
 The District Court's award of $2500 to the appellee to cover expenses, losses and other damages accrued as of the date of its January 7, 1966 order is amply justified by the record. The amount allowed is neither unwarranted nor excessive. There is detailed testimony supporting the reasonableness of the attorneys fees incurred by the appellee as a result of appellant's contumacious and persistent refusals to abide the orders of the court and his efforts to harass the appellee. Those fees alone amounted to more than the $2500 allowed. In addition, the record discloses that appellee incurred other disbursements relating to the litigation necessitated by the appellant's conduct.
 
 
 25
 The flagrant and contumacious character of the appellant's defiance of the court's orders makes it appropriate that appellee be reimbursed for items of expenses necessarily incurred on appeal to this Court in defending the contempt adjudication of the District Court. Schauffler v. United Association of Journeymen, 3 Cir., 246 F.2d 867. Cf. Nelson v. Steiner, 7 Cir., 279 F.2d 944, 948.
 
 
 26
 Accordingly, the judgment orders of the District Court appealed from are affirmed with interest on the $2500 awarded the appellee, Howard R. Reuland, computed at the rate of 5% per annum from January 7, 1966, until the award is paid; costs on appeal, including the cost of the additional transcript of record and the cost of printing the additional appendix filed by the appellee, are allowed to the appellee, Howard R. Reuland, and shall be taxed against the appellant, Russell W. Borrowdale; and the cause is remanded to the District Court with instructions to proceed to ascertain and to award to Howard R. Reuland and against Russell W. Borrowdale, by supplemental order, such amount as will reimburse Howard R. Reuland for his reasonable expenses incurred in the defense of this appeal, including reasonable attorneys fees and other items of litigation expense exclusive of those taxed herein as costs, and for the loss of use of the 13 foot Boston Whaler (dinghy), the brackets for same, and the two fish-fighting chairs, occasioned by continued failure of Russell W. Borrowdale to deliver said articles to Howard R. Reuland, or his agent.
 
 
 27
 To the extent above provided, the motion of the appellee filed herein October 5, 1966, for the award of interest, damages, costs, and reimbursement of expenses incurred in the defense of this appeal, which motion was taken with the case at the time of oral argument, is allowed.[3]
 
 
 28
 Affirmed and Remanded With Instructions.
 
 
 
 Notes:
 
 
 [1]
 The approval stipulation for value was filed October 4, 1965, and the vessel released from custody
 
 
 [2]
 Reversed on other grounds, Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, the reversal, in effect, confirming the jurisdiction of the District Court over the vessel despite the absence of any attachment or stipulation for value
 
 
 [3]
 Motions by appellee to dismiss the appeal filed April 22, 1966 and May 26, 1966, respectively, and ordered taken with the appeal at the time of oral argument, are dismissed as being moot. A motion by appellee that an order of the District Court dismissing Civil Action No. 65 C 114, Transamerica Leasing Corporation v. The Oil Screw HAPPY PAPPY, be made a part of the record herein is denied